## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RYAN MURPHY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SOUNDCLOUD, INC.<br><br>Defendant. | Civil Action No. 1:26-cv-01169<br><br>**CLASS ACTION COMPLAINT**<br>**JURY TRIAL DEMANDED** |

### CLASS ACTION COMPLAINT

Plaintiff Ryan Murphy ("Plaintiff"), by his undersigned counsel, files this Class Action Complaint on behalf of himself and a class of all similarly situated persons against Defendant SoundCloud, Inc. ("Defendant"). Plaintiff bases the forgoing allegations upon personal information and belief, the investigation of counsel, and states the following:

### INTRODUCTION

1.      Defendant SoundCloud, Inc. is a global audio streaming and distribution platform that operates a digital service allowing users—including music creators, podcasters, and listeners—to upload, share, and stream audio content. SoundCloud claims tens of millions of users worldwide and is one of the largest independent music and audio publishing platforms.

2.      In December 2025, audio streaming and creator platform SoundCloud suffered a significant data breach that impacted approximately 29.8 million user accounts—roughly 20 % of its global user base.

3.      The incident stemmed from unauthorized access to an internal service dashboard or system within SoundCloud's infrastructure. Attackers exploited this access to correlate previously hidden email addresses with publicly available profile information,

effectively creating a large dataset that associated personal contact details with user identities.

4.      Specifically, cybercriminals exported email addresses, names, usernames, profile data, and geographic location for SoundCloud users.

5.      The data breach was not the result of a sophisticated or unforeseeable attack, but instead stemmed from SoundCloud's failure to implement and maintain reasonable data security safeguards appropriate to the nature and sensitivity of the information it collected.  At all relevant times, SoundCloud knew or should have known that its systems were attractive targets for cybercriminals and that inadequate security measures created a substantial risk of unauthorized access.

6.      The type of information impacted by the Data Breach can be used to orchestrate a host of fraudulent activities, including financial fraud and identity theft. Indeed, a driving purpose of these types of data breaches is to obtain and misuse victims' Sensitive Information or to make it available on the dark web for misuse.  Information such as the Sensitive Information accessed during the Data Breach may also be used to perform additionally targeted phishing or hacking attacks directed at the victims of the Data Breach. Consequently, all impacted individuals are at a heightened and substantial risk that their information will be disclosed to criminals and misused for attempted or actual fraud or identity theft.

7.      Plaintiff remains at a continued risk of harm due to the exposure and potential misuse of his personal data by criminal hackers.

8.     As a direct and proximate result of SoundCloud's negligent conduct, Plaintiff and similarly situated individuals suffered concrete injuries, including loss of privacy, exposure of sensitive personal information, increased risk of identity theft and fraud, out-of-pocket expenses, and time and effort spent mitigating the ongoing consequences of the breach.

9.     As such, Plaintiff brings this claims for negligence and negligence *per se* on behalf of himself and all others whose Sensitive Information was stolen during the Data Breach.

## JURISDICTION

10.    This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §1332(d), the Class Action Fairness Act, which affords federal courts with original jurisdiction over cases where any member of the plaintiff class is a citizen of a state different from any defendant, and where the amount in controversy exceeds $5,000,000, exclusive of interest and costs.  Here, there are 100 members or more in this proposed class, and at least one of those class members will be diverse from Defendant.

11.    This Court has general personal jurisdiction over SoundCloud, Inc. because maintains its principal place of business in this district at 80 State St., Albany, NY, United States, 12207.

12.    This Court is the proper venue for this case pursuant to 28 U.S.C. §1391(b) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District, and because Defendant conducts a substantial part of their business and is headquartered within this District.

## PARTIES

13.     **Plaintiff** Ryan Murphy is a citizen of Weehawken Township, New Jersey and is a former SoundCloud user.  SoundCloud obtained and maintained the Sensitive Information of Plaintiff and owed him a legal duty and obligation to protect and secure that Sensitive Information from unauthorized access or disclosure.

14.     Plaintiff Murphy suffered actual injury from having his Sensitive Information exposed as a result of the Data Breach, including: (a) time and effort monitoring his accounts for fraudulent charges and to mitigate the risk of harm from the Data Breach; (b) entrusting Sensitive Information to SoundCloud that he would not have had SoundCloud disclosed that it lacked data security practices adequately to safeguard its customers' Sensitive Information; (c) damages to and diminution in the value of his Sensitive Information—a form of intangible property that he entrusted to SoundCloud as a condition of receiving services; (d) loss of his privacy; and (e) continuous imminent an impending injury arising from the increased risk of financial, medical, and identity fraud and theft.

15.     **Defendant SoundCloud, Inc.** is the Data Controller for all United States Sound Cloud users.  It is a Delaware corporation with its principal place of business at 2 Gansevoort Street, 6th Street, New York, NY 10014.

## FACTUAL ALLEGATIONS

**A.      SoundCloud Failed to Safeguard the Sensitive Information it Collects from its Customers.**

16.     SoundCloud provides millions of users with personalized accounts, enabling them to store and manage their music, audio files, profile information, and contact details.

17.     In or about December 2025, SoundCloud discovered unauthorized activity within one of its internal systems, specifically an ancillary service dashboard used in connection with platform operations.

18.     The actors responsible for the breach—including, but not limited to, the extortion group known as ShinyHunters—attempted to extort the Defendant by demanding payment in exchange for non-disclosure and non-release of the stolen dataset.  When Defendant refused to accede to these demands, the data was leaked publicly.

19.     As a direct and proximate result of the unauthorized access, the following categories of data were compromised: emails, usernames, display names, avatars, followers and following counts, and, in some cases, users' country of origin.

**B.     SoundCloud Knew It Needed to Protect Purchasers' Sensitive Data**

20.     As an entity in the business of handling Sensitive Information, SoundCloud knew, or should have known, that it needed to implement measures to adequately protect sensitive data.

21.     SoundCloud has received ample warning of the need to protect sensitive data.

22.     For example, the FTC has issued numerous guidelines for businesses highlighting the importance of reasonable data security practices.  The FTC notes the need to factor data security into all business decision-making.[1]  According to the FTC, data security requires: (1) encrypting information stored on computer networks; (2) retaining payment card information only as long as necessary; (3) properly disposing of personal information that is no longer needed; (4) limiting administrative access to business systems; using industry tested and accepted security methods; (5) monitoring activity on networks to uncover unapproved activity; (6) verifying that

---

[1]     FED. TRADE COMM'N, START WITH SECURITY A GUIDE FOR BUSINESS, LESSONS LEARNED FROM FTC CASES (JUNE 2015), https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf.

privacy and security features function properly; (7) testing for common vulnerabilities; and (8) updating and patching third-party software.[2]

23.    The FTC treats the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5(a) of the FTC Act.

24.    As such, the FTC has issued orders against businesses that failed to employ reasonable measures to secure sensitive payment card data. *See In the matter of Lookout Services, Inc.*, No. C-4326, ⁋ 7 (June 15, 2011) ("[Defendant] allowed users to bypass authentication procedures" and "failed to employ sufficient measures to detect and prevent unauthorized access to computer networks, such as employing an intrusion detection system and monitoring system logs."); *In the matter of DSW, Inc.*, No. C-4157, ⁋ 7 (Mar. 7, 2006) ("[Defendant] failed to employ sufficient measures to detect unauthorized access."); *In the matter of The TJX Cos., Inc.*, No. C-4227 (Jul. 29, 2008) ("[R]espondent stored . . . personal information obtained to verify checks and process unrecepted returns in clear text on its in-store and corporate networks[,]" "did not require network administrators . . . to use different passwords to access different programs, computers, and networks[,]" and "failed to employ sufficient measures to detect and prevent unauthorized access to computer networks . . ."); *In the matter of Dave & Buster's Inc.*, No. C-4291 (May 20, 2010) ("[Defendant] failed to monitor and filter outbound traffic from its networks to identify and block export of sensitive personal information without authorization" and "failed to use readily available security measures to limit access between instore networks . . ."). These orders, which

---

[2]    *Id.*; FED. TRADE COMM'N, PROTECTING PERSONAL INFORMATION, A GUIDE FOR BUSINESS (OCT. 2016), https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf.

all preceded SoundCloud's Data Breach, further clarify the measures businesses must take to meet their data security obligations.

25.    SoundCloud is aware of recent data breaches at involving other businesses. Notwithstanding this awareness, SoundCloud failed to adequately secure its systems, leading to the exposure of the Sensitive Information of millions of individuals.

**C.    SoundCloud Failed to Implement Reasonable Safeguards**

26.    SoundCloud could have minimized or altogether prevented the Data Breach by taking reasonable steps to properly secure and encrypt the Sensitive Information of Plaintiff and the Class and by maintaining a reasonable information retention policy to delete unnecessary Sensitive Information.

27.    Given the duration and the means by which it occurred, the Data Breach could only have happened with significant and highly concerning data security deficiencies that SoundCloud knew or should have known created a significant risk of harm to millions of individuals.

28.    In all, Defendant's unlawful conduct includes, but is not limited to, the following acts and/or omissions:

a.    Failing to maintain an adequate data-security system to reduce the risk of data breaches and cyberattacks.

b.    Failing to meet the standards established by its data-security and privacy policies.

c.    Failing to adequately protect PII entrusted to it.

d.    Failing to properly monitor its own data security systems for existing intrusions.

e.    Failing to train its employees in the proper handling of emails containing PII and maintain adequate email security practices.

f.    Failing to adhere to industry standards for cybersecurity.

29.     Defendant negligently and unlawfully failed to safeguard Plaintiffs' and Class Members' Sensitive Information by allowing cyberthieves to access Defendant's computer network and systems which contained unsecured and unencrypted Sensitive Information.

**D.     SoundCloud's Data Security Failures Have Harmed Plaintiff and the Class**

30.     Personal Information is valuable property. Its value is axiomatic, considering the market value and profitability of "Big Data" to corporations in America. Illustratively, Alphabet Inc., the parent company of Google, reported in its 2020 Annual Report a total annual revenue of $182.5 billion and net income of $40.2 billion.[3] $160.7 billion of this revenue derived from its Google business, which is driven almost exclusively by leveraging the Personal Information it collects about users of its various free products and services.

31.     Criminal law also recognizes the value of Personal Information and the serious nature of the theft of Personal Information by imposing prison sentences. This strong deterrence is necessary because cybercriminals extract substantial revenue through the theft and sale of Personal Information. Once a cybercriminal has unlawfully acquired Personal Information, the criminal can demand a ransom or blackmail payment for its destruction, use the Personal Information to commit fraud or identity theft, or sell the Personal Information to other cybercriminals on the black market.

32.     The U.S. Government Accountability Office ("GAO") released a report as far back as 2007 regarding data breaches, finding that victims of identity theft will face "substantial costs

---

[3]     Alphabet Inc., Annual Report (Form 10-K), SEC, at 32 (Feb. 3, 2021), https://www.sec.gov/ix?doc=/Archives/edgar/data/0001652044/000165204421000010/goog-20201231.htm.

and time to repair the damage to their good name and credit record."[4] This has not changed over the nearly two decades since this study.

33.     The GAO Report explains that "[t]he term 'identity theft' is broad and encompasses many types of criminal activities, including fraud on existing accounts—such as unauthorized use of a stolen credit card number—or fraudulent creation of new accounts—such as using stolen data to open a credit card account in someone else's name."

34.     Identity thieves use personal information for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank/finance fraud.[5]   According to Experian, "[t]he research shows that personal information is valuable to identity thieves, and if they can get access to it, they will use it" to, among other things: open a new credit card or loan; change a billing address so the victim no longer receives bills; open new utilities; obtain a mobile phone; open a bank account and write bad checks; use a debit card number to withdraw funds; obtain a new driver's license or ID; or use the victim's information in the event of arrest or court action.[6]

---

[4]     U.S. GOV'T ACCOUNTABILITY OFF., GAO-07-737, PERSONAL INFORMATION: DATA BREACHES ARE FREQUENT, BUT EVIDENCE OF RESULTING IDENTITY THEFT IS LIMITED; HOWEVER, THE FULL EXTENT IS UNKNOWN (JUNE 2007), https://www.gao.gov/assets/270/262899.pdf [https://perma.cc/GCA5-WYA5].

[5]     The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." 16 C.F.R. §603.2.  The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things: "[n]ame, social security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."  *Id.*

[6]     *See* Louis DeNicola, *What Can Identity Thieves Do with Your Private Information and How Can You Protect Yourself*, Experian (May 21, 2023), https://www.experian.com/blogs/ask-experian/what-can-identity-thieves-do-with-your-personal-information-and-how-can-you-protect-yourself/.

35.    With access to an individual's Sensitive Information, criminals can do more than just empty a victim's bank account—they can also commit all manner of fraud, including obtaining a driver's license or official identification card in the victim's name but with the thief's picture; using the victim's name and Social Security number to obtain government benefits; or filing a fraudulent tax return using the victim's information.  In addition, identity thieves may obtain a job using the victim's Social Security number, rent a house, or receive medical services in the victim's name, and may even give the victim's personal information to police during an arrest, resulting in an arrest warrant being issued in the victim's name.[7]

36.    Identity theft presents many challenges.  In a survey, the Identity Theft Resource Center ("ITRC") found that most victims of identity crimes need more than a month to resolve issues stemming from identity theft and some need over a year.[8]

37.    Even where the information exposed in the breach facially appears limited, grave harms result.

38.    For example, consider an email address.  With just an individual's email address, bad actors could utilize reverse email search tools to discover things like full names, phone numbers, home addresses, places of employment, job titles, social media profiles, and online shopping accounts.[9]

39.    Cyber criminals can then utilize the information recovered to engage in spear phishing.

---

[7]    *Id.*

[8]    *ITRC Annual Data Breach Report 2023*, ITRC (2023), https://www.idtheftcenter.org/publication/2023-data-breach-report/.

[9]    Ashley D'Andrea, *What Can Someone Do With My Email Address*, Keeper (Apr. 18, 2025), https://www.keepersecurity.com/blog/2024/08/02/how-much-information-can-someone-get-from-your-email-address/#:~:text=Since%20many%20people (last visited Feb. 11, 2026).

40.    "Spear phishing is a highly targeted form of phishing designed to deceive individuals or organizations into revealing sensitive information."[10] A spear phisher utilizes information regarding a specific target to craft convincing emails that appear to come from a trusted source.[11] Because a spear phisher includes specific details, the unsuspecting target is more likely to click a link or download an attachment, exposing the target to malware, spyware, or other digital threats.

41.    According to experts in cybersecurity at Proofpoint, "The elaborate and targeted nature of spear phishing attacks makes them one of the most effective and dangerous cybersecurity threats today."[12]

42.    The harm already suffered by Plaintiff demonstrates that the risk of harm to Plaintiff and Class members is present and ongoing.

43.    The risk of identity theft after a data breach is lasting.  The U.S. Government Accountability Office's research into the effects of data breaches found that "in some cases, stolen data may be held for up to a year or more before being used to commit identity theft.  Further, once stolen data has been sold or posted on the Web—as is the case in this Data Breach—fraudulent use of that information may continue for years.  As a result, studies that attempt to measure the harm resulting from data breaches cannot rule out the significant risk of future harm."[13]

44.    Plaintiff and Class Members are at substantial increased risk of suffering identity theft and fraud or misuse of their Private Information as a result of the Data Breach.  From a recent

---

[10]    *What is Spear Phishing*, Proofpoint, https://www.proofpoint.com/us/threat-reference/spear-phishing (last visited Feb. 11, 2026).

[11]    *Id.*

[12]    *Id.*

[13]    U.S. GOV'T ACCOUNTABILITY OFF., *supra*  note 4.

study, 28% of individuals affected by a data breach become victims of identity fraud - this is a significant increase from a 2012 study that found only 9.5% of those affected by a breach would be subject to identity fraud. Without a data breach, the likelihood of identify fraud is only about 3%.

45.    Further, Plaintiff and Class Members have incurred and will incur out of pocket costs for protective measures, such as identity theft protection, credit monitoring, credit report fees, credit freeze fees, and similar costs related to the Data Breach.

46.    Besides the monetary damage sustained in the event of identity theft, consumers may have to spend hours trying to resolve identity theft issues. For example, the FTC estimates that it takes consumers an average of 200 hours of work over approximately six months to recover from identity theft.

47.    Plaintiff and Class Members are also at a continued risk because their information remains in SoundCloud's systems, which the Data Breach showed are susceptible to compromise and attack and are subject to further attack so long as SoundCloud fails to take necessary and appropriate security and training measures to protect the Private Information in its possession.

48.    Plaintiff and Class Members have suffered emotional distress as a result of the Data Breach, the increased risk of identity theft and financial fraud, and the unauthorized exposure of their Private Information to strangers.

49.    As a result of SoundCloud's failure to prevent the Data Breach, Plaintiff and Class Members have suffered and will continue to suffer injuries, including out of pocket expenses; loss of time and productivity through efforts to ameliorate, mitigate, and deal with the future consequences of the Data Breach; theft of their valuable Private Information; the imminent and certainly impeding injury flowing from fraud and identity theft posed by their Private Information

being disclosed to unauthorized recipients and cybercriminals; damages to and diminution in value of their Private Information; and continued risk to Plaintiff's and the Class Members' Private Information, which remains in the possession of Defendant and which is subject to further breaches so long as SoundCloud fails to undertake appropriate and adequate measures to protect the Private Information entrusted to it.

50.     Furthermore, Defendant has not offered identity theft monitoring and/or identity theft protection for its customers.  This lack of resolution is inadequate when the victims will likely face many years of identity theft.

51.     The absence of and/or limited duration of these services is wholly inadequate as they fail to provide for the fact that victims of data breaches and other unauthorized disclosures commonly face multiple years of ongoing identity theft and financial fraud, and they entirely fail to provide any compensation for the unauthorized release and disclosure of Plaintiff's and Class Members' PII.

## CLASS ALLEGATIONS

52.     Plaintiff brings this action on behalf of himself, and all other persons similarly situated pursuant to Fed. R. Civ. P. 23 and seeks certification of the following Nationwide Class:

> All individuals whose data was potentially compromised due to SoundCloud's Data Breach.

53.     Excluded from the class is SoundCloud and its subsidiaries and affiliates; all employees of SoundCloud; all persons who make a timely election to be excluded from the class; government entities; and the judge to whom this case is assigned and his/her immediate family and court staff.

54.    Plaintiff reserves the right to, after conducting discovery, modify, expand, or amend the above Class definition or to seek certification of a class or subclasses defined differently than above before any court determines whether certification is appropriate.

55.    **Numerosity**.  Consistent with Rule 23(a)(1), the members of the Class are so numerous and geographically dispersed that joinder of all Class members is impracticable. Plaintiff believes that there are millions of members of the Class.  The precise number of class members, however, is unknown to Plaintiff.  Class members may be identified through objective means.  Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, and/or published notice.

56.    **Commonality and Predominance**.  Consistent with Fed. R. Civ. P. 23(a)(2) and with 23(b)(3)'s commonality and predominance requirements, this action involves common questions of law and fact which predominate over any questions affecting individual Class members.  These common questions include, without limitation:

a.    Whether SoundCloud knew or should have known that its data environment and cybersecurity measures created a risk of a data breach;

b.    Whether SoundCloud controlled and took responsibility for protecting Plaintiff's and the Class's data when solicited that data, collected it, and stored it on its servers;

c.    Whether SoundCloud's security measures were reasonable in light of the FTC data security recommendations, state laws and guidelines, industry standards, and common recommendations made by data security experts;

d.    Whether SoundCloud owed Plaintiff and the Class a duty to implement reasonable security measures;

e.    Whether SoundCloud's failure to adequately secure Plaintiff's and the Class's data constitutes a breach of its duty to institute reasonable security measures;

f.    Whether SoundCloud's failure to implement reasonable data security measures allowed the breach of its data systems to occur and caused the theft of Plaintiff's and the Class's data;

g.    Whether reasonable security measures known and recommended by the data security community could have prevented the breach;

h.    Whether Plaintiff and the Class were injured and suffered damages or other losses because of SoundCloud's failure to reasonably protect its data systems; and

i.    Whether Plaintiff and the Class are entitled to relief.

57.    **Typicality**.  Consistent with Fed. R. Civ. P. 23(a)(3), Plaintiff is a typical member of the Class.  Plaintiff and the Class are each persons whose data was provided to SoundCloud, whose data resided on SoundCloud's servers, and whose Sensitive Information was exposed in SoundCloud's Data Breach.  Plaintiff's injuries are similar to other class members and Plaintiff seeks relief consistent with the relief due to the Class.

58.    **Adequacy**.  Consistent with Fed. R. Civ. P. 23(a)(4), Plaintiff is an adequate representative of the Class because Plaintiff is a member of the Class and is committed to pursuing this matter against SoundCloud to obtain relief for himself and for the Class.  Plaintiff has no conflicts of interest with the Class.  Plaintiff has also retained counsel competent and experienced in complex class action litigation of this type, having previously litigated data breach cases. Plaintiff intends to vigorously prosecute this case and will fairly and adequately protect the Class's interests.

59.    **Superiority**.  Consistent with Fed. R. Civ. P 23(b)(3), class action litigation is superior to any other available means for the fair and efficient adjudication of this controversy.

Individual litigation by each Class member would strain the court system because of the numerous members of the Class.  Individual litigation creates the potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system.  By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.  A class action would also permit customers to recover even if their damages are small as compared to the burden and expense of litigation, a quintessential purpose of the class action mechanism.

60.    **Injunctive and Declaratory Relief**.  Consistent with Fed. R. Civ. P. 23(b)(2), SoundCloud, through its uniform conduct, acted or refused to act on grounds generally applicable to the Class as a whole, making injunctive and declaratory relief appropriate to the class as a whole.

## LEGAL CLAIMS

### COUNT I
### Negligence

61.    Plaintiff repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

62.    SoundCloud owed a duty to Plaintiff and the members of the Class to take reasonable care in managing and protecting the sensitive data it solicited from Plaintiff and the Class and managed and stored.  This duty arises from multiple sources.

63.    SoundCloud owed a common law duty to Plaintiff and the Class to implement reasonable data security measures because it was foreseeable that hackers would target SoundCloud's data systems and servers containing Plaintiff's and the Class's sensitive data and that, should a breach occur, Plaintiff and the Class would be harmed.  SoundCloud alone controlled its technology, infrastructure, and cybersecurity.  It further knew or should have known that if hackers breached its data systems, they would extract sensitive data and inflict injury upon Plaintiff

16

and the Class.  Furthermore, SoundCloud knew or should have known that if hackers accessed the sensitive data, the responsibility for remediating and mitigating the consequences of the breach would largely fall on individual persons whose data was impacted and stolen.  Therefore, the Data Breach, and the harm it caused Plaintiff and the Class, was the foreseeable consequence of SoundCloud's unsecured, unreasonable data security measures.

64.    Additionally, Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. §45, required SoundCloud to take reasonable measures to protect Plaintiff's and the Class's sensitive data and is a further source of SoundCloud's duty to Plaintiff and the Class.  Section 5 prohibits unfair practices in or affecting commerce, including, as interpreted and enforced by the FTC, the unfair act or practice by businesses like SoundCloud of failing to use reasonable measures to protect sensitive data.  SoundCloud, therefore, was required and obligated to take reasonable measures to protect data it possessed, held, or otherwise used.  The FTC publications and data security breach orders described herein further form the basis of SoundCloud's duty to adequately protect sensitive information.   By failing to implement reasonable data security measures, SoundCloud acted in violation of §5 of the FTCA.

65.    SoundCloud is obligated to perform its business operations in accordance with industry standards.  Industry standards are another source of duty and obligations requiring SoundCloud to exercise reasonable care with respect to Plaintiff and the Class by implementing reasonable data security measures that do not create a foreseeable risk of harm to Plaintiff and the Class.

66.    Finally, SoundCloud assumed the duty to protect Plaintiffs' sensitive data by soliciting, collecting, and storing individuals' data and, additionally, by representing to its customers that it would keep their customers' data safe.

67.    SoundCloud breached its duty to Plaintiff and the Class by implementing unreasonable data security measures that it knew or should have known could cause a Data Breach. SoundCloud knew or should have known that hackers might target sensitive data that SoundCloud solicited and collected on its users and, therefore, needed to use reasonable data security measures to protect against a Data Breach.

68.    SoundCloud was fully capable of preventing the Data Breach.  SoundCloud knew or should have known of data security measures required or recommended by the FTC, state laws and guidelines, and other data security experts which, if implemented, would have prevented the Data Breach from occurring at all, or limited and shortened the scope of the Data Breach. SoundCloud thus failed to take reasonable measures to secure its system, leaving it vulnerable to a breach.

69.    As a direct and proximate result of SoundCloud's negligence, Plaintiff and the Class have suffered and will continue to suffer injury, including the ongoing risk that their data will be used nefariously against them or for fraudulent purposes.

## COUNT II
### Negligence *Per Se*

70.    Plaintiff repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

71.    SoundCloud's unreasonable data security measures and failure to timely notify Plaintiff and the Class of the Data Breach violates Section 5 of the FTC Act.  Although the FTC Act does not create a private right of action, requires businesses to institute reasonable data security measures and breach notification procedures, which SoundCloud failed to do.

72.    Section 5 of the FTCA, 15 U.S.C. §45, prohibits "unfair. . . practices in or affecting commerce" including, as interpreted and enforced by the FTC, the unfair act or practice by

businesses like SoundCloud of failing to use reasonable measures to protect users' sensitive data. The FTC publications and orders described above also form the basis of SoundCloud's duty.

73.     SoundCloud violated Section 5 of the FTC Act by failing to use reasonable measures to protect individuals' personally identifying information and sensitive data and by not complying with applicable industry standards.    SoundCloud's conduct was particularly unreasonable given the sensitive nature and amount of data it stored on individuals and the foreseeable consequences of a Data Breach should SoundCloud fail to secure its systems.

74.     SoundCloud violation of Section 5 of the FTC Act constitutes negligence *per se*.

75.     Plaintiff and the Class are within the class of persons Section 5 of the FTCA (and similar state statutes) was intended to protect.    Additionally, the harm that has occurred is the type of harm the FTC Act (and similar state statutes) was intended to guard against.    The FTC has pursued over fifty enforcement actions against businesses which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same type of harm suffered by Plaintiff and the Class.

76.     As a direct and proximate result of SoundCloud's negligence per se, Plaintiff and the Class have suffered and continue to suffer injury.

**PRAYER FOR RELIEF**

77.     Wherefore, Plaintiff, on behalf of himself and the Class, requests that this Court award relief as follows:

a.     An order certifying the class and designating Plaintiff as the Class Representative and their counsel as Class Counsel;

b.     An award to Plaintiff and the proposed Class members of damages with pre-judgment and post-judgment interest;

c.    A declaratory judgment in favor of Plaintiff and the Class;

d.    Injunctive relief to Plaintiff and the Class;

e.    An award of attorneys' fees and costs as allowed by law; and

f.    An award such other and further relief as the Court may deem necessary or

appropriate.

**JURY TRIAL DEMANDED**

78.    Plaintiff hereby demands a jury trial for all the claims so triable.

Dated: February 11, 2026                    Respectfully submitted,

/s/ Joseph P. Guglielmo
Joseph P. Guglielmo
Andrew Stanko
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
The Hemsley Building
230 Park Avenue
24th Floor
New York, NY 10169
Telephone: (212) 223-6444
Facsimile: (212) 223-6334
jguglielmo@scott-scott.com
astanko@scott-scott.com

Brian C. Gudmundson (*pro hac vice forthcoming*)
Michael J. Laird (*pro hac vice forthcoming*)
Madison M. DeMaris (*pro hac vice forthcoming*)
**ZIMMERMAN REED LLP**
1100 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Telephone: (612) 341-0400
Facsimile: (612) 341-0844
brian.gudmundson@zimmreed.com
michael.laird@zimmreed.com
madison.demaris@zimmreed.com

*Counsel for Plaintiff Ryan Murphy*